# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 8, 2024          Decided December 31, 2024

No. 23-3187

UNITED STATES OF AMERICA,
APPELLEE

v.

JONATHAN JOSHUA MUNAFO,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00330-1)

———

*Kevin Lerman*, Assistant Federal Public Defender, argued the cause and filed the briefs for appellant.

*Reuven Dashevsky*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Matthew M. Graves*, U.S. Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Sean P. Murphy*, Assistant U.S. Attorneys.

Before: PILLARD, PAN, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

2

PILLARD, *Circuit Judge*:  Jonathan   Joshua   Munafo
pleaded guilty to two charges related to his role in the January
6, 2021, attack on the United States Capitol.  The district court
accepted the plea and entered a judgment of conviction.  The
parties agreed that the U.S. Sentencing Guidelines range for the
offenses at issue was 30-37 months, and the court sentenced
Munafo to 33 months imprisonment.

On appeal, Munafo argues that the government breached
his plea agreement in two ways, and that he is entitled to
resentencing in conformity with the plea agreement as he reads
it.  First, he asserts that the agreement required the dismissal of
a pending misdemeanor assault charge in D.C. Superior Court.
Second, he claims that the agreement barred the government
from referring at sentencing to some of Munafo's past
statements and affiliations.  We hold that Munafo has forfeited
the first objection by failing to press it before the district court,
and that in any event both fail on their merits because neither
argument is supported by the text of the plea agreement.

Munafo also asks that his sentence be vacated because—
he claims—it presents the appearance of having been based on
his constitutionally protected political speech and affiliations.
But in the plea agreement Munafo waived the right to appeal
his sentence, and we hold that he has made no colorable claim
of a miscarriage of justice that would support voiding that
waiver.  We therefore affirm Munafo's sentence.

**I.**

**A.**

The   sentence   at   issue   here   stems   from   Munafo's
participation in the mob attack on the United States Capitol on
January 6, 2021, waged to prevent Congress from certifying
President Biden as the winner of the 2020 Presidential Election.

3

Unless otherwise specified, in describing the relevant facts we rely on the Statement of Offense that Munafo confirmed was "true and accurate" as part of his plea agreement. Statement of Offense 6 (Appellant's Appendix (App.) 57).

Munafo traveled to Washington, D.C., on January 6 to support President Trump. On the afternoon of January 6, Munafo joined a violent mob that breached the police line surrounding the Capitol and overran the West Plaza. Capitol Police then endeavored to block the rioters from forcing their way into the Capitol Building through the Inauguration Tunnel. Munafo was among the rioters who physically attacked law enforcement officers in an effort to force their way through the Inauguration Tunnel. During the fighting, rioters succeeded in pulling Capitol Police Officer Michael Fanone out of the police line. When Metropolitan Police Department Officer Neil McAllister attempted to protect Fanone, Munafo punched Officer McAllister twice and pulled McAllister's riot shield out of his grasp. Statement of Offense ¶ 10 (App. 55). Munafo also used a flagpole to repeatedly strike a window of the Capitol Building.

**B.**

The government charged Munafo with ten offenses. Munafo agreed to plead guilty to Counts One and Two: obstructing, impeding, and interfering with law enforcement during a civil disorder in violation of 18 U.S.C. § 231(a)(3) (Count One) and assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111(a)(1) (Count Two). Munafo also agreed that the aforementioned Statement of Offense accurately described his conduct on January 6. In view of the government's agreement to support a three-level reduction of Munafo's offense level in return for his timely acceptance of responsibility, Munafo's estimated Sentencing

4

Guidelines range was 30-37 months imprisonment. The parties agreed that a sentence within that range would be "reasonable" under 18 U.S.C. § 3553(a), even as they reserved the right to seek a variance and request a sentence outside of that range. Moreover, the Reservation of Allocution clause of the plea agreement reserved to both parties "the right to describe fully . . . to the sentencing judge[] the nature and seriousness of [Munafo's] misconduct, including any misconduct not described in the charges to which [Munafo] is pleading guilty" and to "inform the presentence report writer and the Court of any relevant facts." Plea Letter 5 (App. 44).

In return for Munafo's guilty plea, the government promised to "request that the Court dismiss the remaining counts of the Indictment." Plea Letter 2 (App. 41). The agreement also guaranteed that Munafo "will not be further prosecuted criminally . . . for the conduct set forth in the attached Statement of Offense." Plea Letter 2 (App. 41). And the government pledged that Munafo "will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia by [Munafo] prior to the execution of this Agreement and about which [the government] was made aware by [Munafo] prior to the execution of this Agreement." Plea Letter 2 (App. 41).

Finally, Munafo agreed to waive his right to appeal his sentence unless it exceeded the statutory maximum or Guidelines range for his offenses of conviction.

**C.**

Both parties submitted memoranda in advance of Munafo's sentencing. Munafo sought to portray his conduct as an aberrant departure from his peaceful political activity as a "Front Row Joe"—a moniker for certain dedicated supporters

5

of President Trump who queued for front row seats at campaign rallies. The government emphasized Munafo's history of violent conduct, as well as allegations that Munafo recently joined with inmates in the D.C. Jail to assault other inmates.

At Munafo's sentencing hearing, the government presented further information as showing Munafo's lack of respect for the law. First, the government quoted a statement by Saundra Kiczenski, a fellow "Front Row Joe" who appears next to Munafo in a picture included in Munafo's own sentencing memorandum, that the January 6 rioters "were just there to overthrow the government." Sentencing Tr. 7:16-17 (App. 128). Second, the government recounted that, on a phone call to participants in a prayer vigil for January 6 prisoners, Munafo said that his case was before Judge Boasberg and so he hoped to receive the "Boasberg discount" of a sentence half as long as what the government recommended. Sentencing Tr. 8:14-21 (App. 129). The government also noted that Munafo praised the book *Becoming a Barbarian*, which— as the government described it—urges readers to "choose your values" and "go all in and devote [your] lives to one group of people above all others." Sentencing Tr. 8:22-9:12 (App. 129-30). The government requested a sentence of 37 months.

For his part, Munafo denied that he had assaulted anyone in jail as the government asserted. And, while he conceded that the government's sentencing recommendation was in line with the plea agreement, Munafo objected that the government's sentencing presentation breached the agreement because it covered topics beyond the agreed-upon Statement of Offense, exceeded the limitations of the plea agreement's Reservation of Allocution clause, was based on unvetted and unreliable statements, and sought to "impute the actions of others" to Munafo. Sentencing Tr. 30:20-37:18 (App. 151-58).

6

Munafo did not seek to withdraw his guilty plea, but instead requested "specific performance," meaning a resentencing at which the government would be prevented from engaging in "allocution and advocacy that's outside of the agreed-upon framework by the parties." Sentencing Tr. 35:13-36:23, 37:17-18 (App. 156-58).

The district court ruled that the government had not breached the agreement and emphasized that it based Munafo's sentence solely on his admitted conduct. The district court sentenced Munafo to 33 months imprisonment, 36 months supervised release, and a special assessment of $200. Munafo reiterated his objection to the court "taking into account factors that it wasn't supposed to" in deciding his sentence. Sentencing Tr. 45:15-20 (App. 166).

With the sentence determined and the proceeding drawn to a close, Munafo's counsel brought "one additional matter" to the district court's attention. Sentencing Tr. 46:5-13 (App. 167). Counsel stated his understanding that the government also "agree[d] to dismiss and not charge Mr. Munafo in the superior court for additional crimes that occurred prior to the execution of the [plea] agreement," including a pending D.C. Superior Court misdemeanor charge unrelated to Munafo's conduct on January 6. Sentencing Tr. 46:5-13 (App. 167). After a brief discussion of whether the plea agreement required dismissing that charge, the district court said "[l]et me just look at the agreement" and then announced it was "not going to say anything about that" and suggested Munafo's counsel speak to the Superior Court division of the U.S. Attorney's Office. Sentencing Tr. 46:25, 47:3-7 (App. 167-68). Munafo's counsel acknowledged the court's statement without objection.

Munafo timely appealed his sentence. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

7

## II.

We first address Munafo's two claims of breach of the plea agreement.  To preserve a claim of error, a party must inform the court "of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."  Fed. R. Crim. P. 51(b); *see United States v. Mack*, 841 F.3d 514, 525-26 (D.C. Cir. 2016).  As to claims that Munafo preserved, we "interpret the terms of the plea agreement *de novo*" and, "[c]onsistent with constitutional principles and the settled rule that contracts are construed against their drafters, we construe any ambiguities . . . against the government."  *United States v. Moreno-Membache*, 995 F.3d 249, 254 (D.C. Cir. 2021).  "[T]he law demands clarity when constitutional rights are waived."  *Id*. at 251.  An unpreserved claim of breach of a plea agreement, by contrast, is reviewed only for plain error.  *Puckett v. United States*, 556 U.S. 129, 143 (2009).  Such a claim merits reversal only if the breach was "clear or obvious, rather than subject to reasonable dispute," the breach resulted in prejudice, and the breach resulted in a "miscarriage of justice."  *United States v. Thomas*, 999 F.3d 723, 728 (D.C. Cir. 2021) (quoting *Puckett*, 556 U.S. at 135); *see* Fed R. Crim. P. 52(b).

Munafo asserts both that the plea agreement required the dismissal of his D.C. Superior Court misdemeanor charge and that it forbade some of the government's factual assertions at sentencing.  We review the former claim for plain error, because Munafo failed to obtain a ruling from the district court on whether the plea agreement required that charge's dismissal, and review the latter argument *de novo*.  Because each challenge rests on an erroneous interpretation of the plea agreement, we reject both arguments.

8

## A.

Munafo first argues that the plea agreement's promise that he "will not be charged with any non-violent criminal offense . . . committed within the District of Columbia by [the defendant] prior to the execution of this Agreement" required that the government dismiss a 2020 misdemeanor assault charge that, at the time of sentencing in this case, was pending in D.C. Superior Court. Plea Letter 2 (App. 41). We hold that the relevant provision of the plea agreement applies only to hypothetical future charges based on Munafo's pre-plea conduct, and not to the already-pending 2020 assault charge.

We first determine whether Munafo preserved this issue for appellate review. After the district court imposed the sentence and, per the plea agreement, dismissed the remaining counts of the indictment, Munafo's counsel told the court that he believed the plea agreement required the government also to dismiss the 2020 assault charge. Sentencing Tr. 46:5-13 (App. 167). The government responded that "this wasn't part of something that they have requested of me beforehand," and that the Superior Court action "is not related to January 6. It's a separate incident that happened during a previous visit to Washington, D.C." Sentencing Tr. 46:18-22 (App. 167). Without expressly ruling on whether Munafo's interpretation of the plea agreement was correct, the district court declared "I am not going to say anything about that" issue and suggested that Munafo's counsel discuss it with the U.S. Attorney's Office. Sentencing Tr. 47:3-7 (App. 168). Rather than object or demand that the district court rule on the question, Munafo's counsel merely responded "Okay." Sentencing Tr. 47:8 (App. 168). That did not suffice to preserve the claim. And, after the U.S. Attorney's Office refused Munafo's request to dismiss the D.C. Superior Court charge, counsel did not return to ask the district court to enforce his reading of the plea agreement as

9

requiring that the 2020 assault charge be dropped.  We review Munafo's unpreserved objection for plain error.

Accordingly, to prevail here Munafo must show (1) a clear breach of the plea agreement (2) that caused him prejudice, and (3) that the breach resulted in a miscarriage of justice.  The second and third factors are easily met here.  A governmental refusal to fulfill a binding agreement to dismiss a criminal charge would cause obvious prejudice to the defendant.  And allowing the government to secure a guilty plea in return for its promise to drop a charge that the government then refuses to dismiss would "seriously affect the fairness, integrity, or public reputation of judicial proceedings."  *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993) (formatting altered)).  As to the first factor, if a plea agreement required dismissal of a charge, the government's unexplained failure to fulfill that requirement would almost certainly satisfy the plain error standard.

But Munafo's claim fails at the first step:  There was no breach of the plea agreement, let alone one that was "clear or obvious."  *Thomas*, 999 F.3d at 728.  The wording of the disputed clause does not require dismissal of the unrelated assault charge that was pending against Munafo when he entered the plea agreement in this case.  Reading the clause in context with other terms of the agreement further confirms that it applies only to yet-to-be-filed charges.

The disputed clause promises that Munafo "will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia . . . prior to the execution of this Agreement."  Plea Letter 2 (App. 41).  By agreeing that the defendant, upon pleading guilty, "will not be charged" with additional offenses, the government made a promise about its

10

own future charging behavior: It pledged not to initiate any new prosecution relating to Munafo's past, non-violent conduct in the District of Columbia.

Munafo argues that the phrase "will not be charged" refers to an ongoing status of continuing to "be charged" with an offense, which persists until the charge is dropped or otherwise resolved. Munafo Reply Br. 15. His reading is unsupported. To "charge" someone means "[t]o accuse (a person) of an offense." *Charge*, BLACK'S LAW DICTIONARY (11th ed. 2019) (def. 1). The plea agreement's use of the future tense "will not be charged" refers to conduct that has yet to occur—specifically, the act of charging Munafo with other applicable crimes. It is not naturally read to undo or reverse the government's past charging decisions. Nor does the agreement's use of the future passive "will not be charged" phrasing, rather than the equivalent "will not charge Munafo" with a non-violent criminal offense, support Munafo's interpretation.

The language of the relevant phrase of the plea agreement is thus sufficient to resolve this challenge. But if additional evidence were needed, the plea agreement notably uses different, clearly distinct language when referring to the disposition of charges that (like those in the 2020 assault case) had already been filed at the time of the agreement. First, the agreement promises that Munafo "will not be further prosecuted criminally" for the conduct described in the Statement of Offense. Plea Letter 2 (App. 41). Second, the government pledges to "request that the Court dismiss the remaining counts of the Indictment in this case." Plea Letter 2 (App. 41). Both of those phrases—"further prosecute" and "dismiss"—unambiguously cover offenses with which Munafo had already been charged, and for which his prosecution had already begun. But neither of those provisions covers the 2020

11

misdemeanor assault charge, which did not involve conduct described in the Statement of Offense and was not contained in the federal indictment. The plea agreement's use of "will not be charged" to describe offenses beyond those in the Statement of Offense and the indictment, rather than promising that the government would "dismiss" or not "further prosecute" such offenses, confirms that the former provision applies only to potential future charges resulting from Munafo's conduct.

**B.**

Munafo also claims that the government's sentencing allocution violated the terms of the plea agreement. There is no dispute that Munafo preserved this argument. We conclude on *de novo* review that Munafo has failed to demonstrate that the government's allocution breached the plea agreement.

Munafo primarily objects to the government's references to the statement of his fellow "Front Row Joe" Saundra Kiczenski and to Munafo's comments on the phone call with people holding a prayer vigil for the January 6 prisoners. Nothing in the plea agreement forbade the government from referencing that information at sentencing. The agreement expressly reserved—to both parties—the right to "describe fully . . . any misconduct *not described in the charges* to which [Munafo] is pleading guilty" and to "inform . . . the Court of any relevant facts" at sentencing. Plea Letter 5-6 (App. 44-45) (emphasis added). Information that the government believed shed light on Munafo's respect for the law, a relevant consideration at sentencing per 18 U.S.C. § 3553(a)(2)(A), was within the permissible scope of the sentencing allocution under the plea agreement. The same is true of the allegation that Munafo engaged in violence while in custody in the D.C. Jail.

Munafo seeks to draw support from *United States v. Mojica-Ramos*, 103 F.4th 844 (1st Cir. 2024), in which the

12

imposition of an upward-variant sentence following the prosecutor's suggestions that the defendant likely committed other crimes and was "exceptional[ly]" dangerous implicitly breached the government's commitment in the plea agreement to advocate for a sentence within the Guidelines range. *Id*. at 850-51. As an initial matter, even if we agreed with Munafo that the government was subtly urging the district court in his case to vary upward from the Guidelines range—which we do not—that would not have breached his plea agreement, which (unlike *Mojica-Ramos*) expressly permitted either party to request a variance. Plea Letter 5 (App. 44).

In any event, Munafo identifies nothing like a suggestion that Munafo was exceptionally dangerous or otherwise deserving of an atypically harsh sentence. At sentencing, the government recommended a 37-month sentence of imprisonment even as it noted that it would not "quibble" with the judge "over [the] one month" it sought beyond the probation office's recommendation of 36 months. Sentencing Tr. 13:8-21 (App. 134). And, unlike the sentence on appeal in *Mojica-Ramos*, the 33-month sentence the court imposed on Munafo was within the agreed-upon Guidelines range and below the government's recommendation. Sentencing Tr. 43:21-24 (App. 164); *see Mojica-Ramos*, 103 F.4th at 848-49.

## III.

Lastly, we address Munafo's claim that, even if the government did not breach the plea agreement, his sentence must be reversed on the ground that it appears to have been based on Munafo's constitutionally protected political speech and associations. We see no basis in the record that would cause any fair observer to suspect that the district court impermissibly disfavored Munafo because of his political beliefs or associations. And this claim stumbles at the gate

13

because Munafo expressly waived his right to appeal his sentence outside of circumstances not implicated in this case—namely, a sentence "above the statutory maximum or guidelines range." Plea Letter 8 (App. 47).

A criminal defendant "may waive his right to appeal his sentence as long as his decision is knowing, intelligent, and voluntary." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). But because such a defendant does not "agree to accept any defect or error that may be thrust upon him by . . . an errant sentencing court," we will not enforce a waiver of the right to appeal "if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice." *Id*. at 530-31. For example, we will not enforce a waiver if a sentence "is 'colorably alleged to rest upon a constitutionally impermissible factor, such as the defendant's race or religion.'" *United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015) (quoting *Guillen*, 561 F.3d at 531). And, while "the Constitution does not erect a *per se* barrier" to the admission of First Amendment-protected beliefs and associations at sentencing, the First Amendment does prohibit consideration "of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." *Dawson v. Delaware*, 503 U.S. 159, 165, 168 (1992).

Munafo does not dispute that his appeal waiver was knowing, intelligent, and voluntary. Instead, he contends that his sentence falls into the "miscarriage of justice exception" to enforceability, *Adams*, 780 F.3d at 1184 (formatting altered), because it appears to rest on Munafo's First Amendment-protected activities.

Munafo's argument immediately runs into difficulty because he alleges only that his sentence "has the appearance"

14

of resting on his constitutionally protected expression.  Munafo Br. 35.  But our circuit's miscarriage of justice exception applies when a sentence is "colorably alleged *to rest* upon a constitutionally impermissible factor," *Guillen*, 561 F.3d at 531 (emphasis added), not necessarily when a sentence is only alleged to *appear* to rest upon such a factor.  The government argues that the distinction supports affirmance here.  Munafo responds that even the appearance of reliance on an impermissible factor can invalidate a sentence.  For that variant of taint, Munafo relies principally on the Second Circuit's decision in *United States v. Kaba*, 480 F.3d 152, 158 (2d Cir. 2007), which vacated and remanded a sentence that the district court had justified in part as a crime deterrent directed at people of the defendant's national origin.  But Kaba—unlike Munafo—had not waived her right to challenge her sentence on appeal, *id.*, and the Second Circuit accordingly did not address whether proof that the circumstances of sentencing gave rise to an appearance that the sentence was influenced by an impermissible factor would suffice to void a knowing and voluntary waiver.

For the purpose of this appeal, we nonetheless assume without deciding that we may decline to enforce an appeal waiver when the defendant colorably alleges that his sentence appears to rest on constitutionally impermissible factors.  Munafo argues that courts should "take great care to avoid" imposing a sentence that "leaves the appearance of being based on beliefs and associations protected by the First Amendment."  Munafo Reply Br. 21.  There are compelling arguments in favor of such a standard.  Requiring a colorable allegation that a challenged sentence in fact rested on impermissible factors might place defendants—and courts on review—in the uncomfortable position of choosing between abandoning a claim and accusing a sentencing judge of bigotry.  In *Kaba*, for example, the district court announced from the bench that it

15

hoped that the harsh sentence it imposed on Kaba would send a message to other "people from the Guinea community" in New York.  480 F.3d at 155-56, 158-59.  In vacating that sentence, the Second Circuit asserted that it had "no doubt that the district court 'harbored no bias' toward Kaba because of her national origin," and identified the problem as only "the appearance of unfairness."  *Id*. at 158.  Vigilance against unconstitutional factors affecting judicial decision making is also manifest in the due process standard for claims of judicial bias, which "may sometimes demand recusal even when a judge 'ha[s] no actual bias'" if, "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *See Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (first quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986), then quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  On the other hand, we have noted that the reliable enforceability of appeal waivers is part of what makes them valuable to defendants as "an additional bargaining chip" to use in plea negotiations.  *Adams*, 780 F.3d at 1184 (quoting *Guillen*, 561 F.3d at 530).  In defending the narrowness of the "miscarriage of justice" exception to such waivers, we stressed that a waiver may "lose its value" as negotiating leverage "[i]f the Government cannot count upon the waiver being enforced." *Id*.

The precise rule is ultimately immaterial here because even under Munafo's preferred standard his appeal waiver must be enforced.  There is no indication whatsoever that the district court's sentence presents the appearance of relying on any constitutionally impermissible factor, such as Munafo's political beliefs.  To the contrary, the district court repeatedly declared that Munafo's sentence was based only on Munafo's own conduct and background, and that the court was not assuming that Munafo had "adopted any statement" of others

16

or "attributing others' behavior" to Munafo. Sentencing Tr. 17:11-17, 43:3-5 (App. 138, 164). Munafo's reliance on *Kaba* is therefore misplaced. In holding that Kaba's harsh sentence raised the appearance of unconstitutional reliance on her national origin, the Second Circuit primarily relied on the district court's own explanation. The district court highlighted deterrence, expressing hope that, in sentencing a person of Guinean origin, its message would reach other people from Guinea who might be involved in the heroin trade and would "deter other people from that background" from committing similar offenses. *Kaba*, 480 F.3d at 155-56.

In sharp contrast to the *Kaba* court, the district court here gave unambiguous assurance that it was "merely considering [Munafo's] conduct" rather than any impermissible factor. Sentencing Tr. 17:17 (App. 138). Munafo contends that the district court's statement that there had been "plenty of violence in [Munafo's] past," Sentencing Tr. 43:6-13 (App. 164), demonstrates that the court was persuaded by the government's suggestions that Munafo was politically affiliated with other violent January 6 defendants and violent D.C. Jail inmates. But the court made that observation based on the record before it and in the context of expressing hope that, with mental health treatment, Munafo could avoid a recurrence of "the kinds of things that's happened over the last 20 years." Sentencing Tr. 43:8-13 (App. 164). Rather than imputing the violence of his putative political associates to Munafo, the district court referenced the many prior incidents of Munafo's own violent conduct spanning decades, as recounted in the presentence report. No reasonable observer could view Munafo's sentence as potentially resting on any "constitutionally impermissible factor."

17

**IV.**

For the foregoing reasons, we affirm the sentence the district court imposed.

*So ordered.*